Matthew K. Bishop (Mont. Bar No. 9968)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 324-8011
bishop@westernlaw.org

Kelly E. Nokes (Mont. Bar No. 39465862)
Western Environmental Law Center
P.O. Box 218
Buena Vista, CO 81211
(575) 613-8051
nokes@westernlaw.org

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT al., <br><br> Plaintiffs, <br><br> vs. <br><br> RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service, et al., <br><br> Federal-Defendants. | Case No. 9:22-cv-00149-DLC-KLD <br><br> **DECLARATION OF JEFFREY LONN** |

1

Pursuant to 28 U. S. C. § 1746, I, Jeffrey Lonn, declare under penalty of perjury that the following is true and correct:

1. My name is Jeffrey D. Lonn and I reside in Hamilton, Montana.

2. I am a research geologist and have a Master of Science in Geology, which I received in 1984.

3. I am a member of WildEarth Guardians (Guardians), a plaintiff in this case, and have affiliated as a member and donor of this organization since 2020. Guardians' mission is to protect and restore the wildlife, wild places, wild rivers, and health of the American West. I support Guardians because of their efforts to protect our public lands from ecological damage.

4. I am an avid hiker and research geologist who frequently visited the East Paradise project area between 1995 and 2010, both for geologic work and for hiking with friends who live part-time in the area. I have hiked through all of the allotment areas at issue in the East Paradise decision at one time or another, including multiple trips from the Pine Creek and Suce Creek trailheads, and have camped at the Pine Creek Campground.

5. I enjoy the East Paradise area because of its interesting and poorly known geology, its abundant wildlife, its challenging topography, and

its spectacular scenery. In addition to seeing many elk and deer in the area, I also once saw a grizzly bear here.

6. I remember that some areas I visited in the East Paradise project area had been badly degraded by cattle grazing. Encountering cows, their waste, and the invasive weeds they spread quickly diminishes the sense of wildness I seek in the outdoors. Having to cross fences constructed for cattle grazing does not help. There are few things that bug me more than crossing fences on public land, a frequent occurrence at my job.

7. I believe that the Forest Service should have chosen Alternative 1 for the East Paradise project. This alternative would have allowed no grazing to occur in these allotments and would have fostered the recovery of native plant and animal species, and the restoration of the sense of wildness that I seek when visiting this area. The Forest Service's own analysis demonstrated that Alternative 1 would have been the most beneficial to the natural forest ecosystem, wildlife, and wildlife habitat in this area.

8. I will, someday in the near future, return to the East Paradise region to visit my friends that still live there and continue my assessment of the geologic questions there that remain unanswered. However, it is less appealing knowing that I will still encounter cattle and their detrimental

effects when I visit next, as a result of the East Paradise decision. I am especially troubled that some of the project allotments have been expanded and the grazing season has been lengthened. Weeds will no doubt be even worse than I remember from my prior visits. And because cattle displace wildlife, my chances for seeing wildlife will no doubt be lower.

9. If Guardians is successful in this case, the public's right to know what the environmental impacts of livestock grazing on our public lands will be upheld. Our federal laws demand that agencies analyze the impacts of their actions on the environment, but the Forest Service failed to do so here in approving the East Paradise project's continued and expanded grazing without properly considering the impacts of such action on local wildlife and their habitats, including federally protected grizzly bears. My ability to participate fully in the public process regarding this decision that effects an area where I enjoy recreating, looking for wildlife, and visiting will be restored if the agency is held accountable to following the mandates of the National Environmental Policy Act (NEPA).

10. A court ruling to stop this decision would help alleviate my concerns. In these days of climate change and Montana's ever increasing human population, our public land agencies should not prioritize industrial

uses like cattle ranching over restoration and preservation of as much of the natural world as possible. Unspoiled public lands are in short supply, and there is no reason to speed up the degradation of any of them.

Executed on this 29th day of November, 2023 in Hamilton, Montana.

_____

JEFF LONN