TODD KIM
Assistant Attorney General

JOSEPH W. CRUSHAM, CA Bar No. 324764
Trial Attorney, Wildlife & Marine Resources Section
KRYSTAL-ROSE PEREZ, TX Bar No. 24105931
Trial Attorney, Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
(202) 307-1145 (Crusham)
(202) 305-0486 (Perez)
(202) 305-0275 (fax)
joseph.crusham@usdoj.gov
krystal-rose.perez@usdoj.gov

*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

Case No. 9:22-cv-149-DLC-KLD

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, et al., )<br>)<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>RANDY MOORE, et al., )<br>)<br>Defendants. )<br>) | **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ADMIT EXTRA RECORD EVIDENCE (ECF. NO. 25)** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

STANDARD OF REVIEW .........................................................................2

ARGUMENT ..............................................................................................5

   I.   Plaintiffs did not comply with the Court's Case Management Order. ...........6

  II.  Plaintiffs fail to show that the Administrative Record will frustrate judicial review............................................................................................7

 III. Plaintiffs seek to offer inadmissible expert opinion through the Mattson declaration.................................................................................12

 IV. Plaintiffs fail to show that the "relevant factors" and "technical terms" exceptions apply to the Mattson declaration. .................................................14

  V.  The Mattson declaration does not support Plaintiffs' request for relief........19

CONCLUSION .........................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Against Toxics v. U.S. EPA*,
  688 F.3d 989 (9th Cir. 2012) ................................................................................33

*Alsea Valley All. v. Evans*,
  143 F. Supp. 2d. 1214 (D. Or. 2001) ....................................................................19

*Animal Def. Council v. Hodel*,
  840 F.2d 1432 (9th Cir. 1988) ..............................................................................6

*Animal Def. Counsil v. Hodel,*
  867 F.2d 1244 (9th Cir. 1989) .........................................................................7, 17

*Asarco, Inc. v. EPA*,
  616 F.2d 1153 (9th Cir. 1980) .........................................................................5, 18

*Califano v. Sanders*,
  430 U.S. 99 (1977) ................................................................................................3

*Camp v. Pitts*,
  411 U.S. 138 (1973) ..........................................................................................4, 16

*Citizens to Pres. Overton Park v. Volpe*,
  401 U.S. 402 (1971) ..............................................................................................2

*Cook Inletkeeper v. EPA*,
  400 F. App'x 239 (9th Cir. 2010) ........................................................................24

*Ctr. for Biological Diversity v. Blank*,
  933 F. Supp. 2d 125 (D.D.C. 2013) ....................................................................14

*Ctr. for Biological Diversity v. Spellmon*,
  No. 21-cv-47-BMM, 2022 WL 1734152 (D. Mont. Feb. 2, 2022) ......................8

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  450 F.3d 930 (9th Cir. 2006) ..........................................................................7, 17

*Ctr. for Env't. Law & Pol'y v. U.S. Bureau of Reclamation*,
  655 F.3d 1000 (9th Cir. 2011) ............................................................................14

*Earth Island Inst. v. Carlton*,
    626 F.3d 462 (9th Cir. 2010) ................................................................20

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) .............................................................................5

*Friends of Endangered Species, Inc. v. Jantzen*,
    760 F.2d 976 (9th Cir. 1985) ..............................................................32

*Friends of the Earth v. Hintz*,
    800 F.2d 822 (9th Cir. 1986) ................................................................4

*Gallatin Wildlife Ass'n v. United States Forest Serv.*,
    No. 15-cv-27-BU-BMM, 2016 WL 6684195 (D. Mont. Mar. 9, 2016) ....... 26, 29

*Greenpeace Action v. Franklin*,
    14 F.3d 1324 (9th Cir. 1992) ..............................................................20

*Hausrath v. United States Dep't of the Air Force*,
    491 F. Supp. 3d 770 (D. Idaho 2020) ............................................ 28, 29

*Havasupai Tribe v. Robertson*,
    943 F.2d 32 (9th Cir. 1991) ..................................................................3

*Helena Hunters & Anglers Ass'n v. Moore*,
    No. 22-cv-126-DWM, 2023 WL 6626158 (D. Mont. Oct. 11, 2023)........... 22, 34

*Hunters v. Marten*,
    470 F. Supp. 3d 1151 (D. Mont. 2020) ..................................... 8, 28, 29

*Inland Empire Pub. Lands Council v. U.S. Forest Serv.*,
    88 F.3d 754 (9th Cir. 1996) .......................................................... 27, 29

*Laguna Greenbelt v. U.S. Dep't of Transp.*,
    42 F.3d 517 (9th Cir. 1994) ................................................................18

*Lands Council v. Powell*,
    395 F.3d 1019 (9th Cir. 2005) ..........................................................3, 7

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) ..................................................................... 19, 21

*Nat'l Audubon Soc. v. U.S. Forest Serv.*,
    46 F.3d 1437 (9th Cir. 1993) ........................................................ 27, 28

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    422 F.3d 782 (9th Cir. 2005) ..............................................................34

*Native Ecosystems Council v. Weldon*,
   232 F. Supp. 3d 1142 (D. Mont. 2017) ...............................................................25

*Nw. Env't. Advocates v. Nat'l Marine Fisheries Serv.*,
   460 F.3d 1125 (9th Cir. 2006) .....................................................................5

*Nw. Env't. Def. Ctr. v. Bonneville Power Admin.*,
   117 F.3d 1520 (9th Cir. 1997) .....................................................................5

*Parravano v. Babbitt*,
   837 F. Supp. 1034 (N.D. Cal. 1993) .......................................................... 16, 30

*Pinnacle Armor v. United States*,
   923 F. Supp. 2d 1226 (E.D. Cal. 2013) ...........................................................8, 24

*Price Rd. Neighborhood Ass'n Inc. v. U.S. Dep't of Transp.*,
   113 F.3d 1505 (9th Cir. 1997) ....................................................................21

*Pub. Power Council v. Johnson*,
   674 F.2d 791 (9th Cir. 1982) .................................................................. 30, 31

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) .....................................................................1

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014) ....................................................................25

*Speaks v. Mazda Motor Corp.*,
   14-25-M-DLC, 2015 WL 1189520 (D. Mont. Mar. 16, 2015) .............. 11, 12, 22

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   100 F.3d 1443 (9th Cir. 1996) ........................................................ 4, 6, 18, 23, 31

*Washington v. U.S. Dep't of the Navy*,
   No. 2:19-cv-01059-RAJ-JRC, 2021 WL 8445582 (W.D. Wash. Dec. 10, 2021)
   .................................................................................................... 27, 28

## Statutes

5 U.S.C. § 706 ...........................................................................................2

## Regulations

36 C.F.R. § 220.7(a) ..................................................................................9

# INTRODUCTION

Plaintiffs bring this case under the Administrative Procedure Act (APA), which limits judicial review to the administrative record.  Plaintiffs now attempt to expand this limited review by supplementing the Administrative Record with the declaration of David J. Mattson, ECF No. 26-1.[1]  The Court should reject this attempt for multiple reasons.

First, Plaintiffs failed to comply with the Case Management Order, and their Motion should be denied on that ground alone.  Second, even if Plaintiffs' Motion were procedurally proper, Plaintiffs have failed to meet their burden of establishing that one of the narrow exceptions to the record review rule applies.  Defendants lodged the Forest Service's Administrative Record for its decision to authorize the East Paradise Range Allotment Management Plan (the AMP decision) on the Custer Gallatin National Forest.  ECF No. 23.  The Administrative Record fully

---

[1] Plaintiffs move to supplement only the Administrative Record for the AMP decision.  *See* Pls.' Mot. to Admit Extra-Record Evidence (Pls. Mot.), ECF No. 25, at 1–4 (identifying only their NEPA claims challenging the AMP decision); *id.* at 11–31 (addressing only the AMP decision).  Plaintiffs' Motion does not even acknowledge that they have a separate claim under the Endangered Species Act (ESA) challenging the Fish and Wildlife Service's Biological Opinion.  Thus, even if the Court grants Plaintiffs' Motion (and it should not), it should consider the declaration only for the purpose for which Plaintiffs' offer it: consideration of their NEPA claims challenging the Final EA for the AMP decision.  Plaintiffs have not argued and have thus failed to show why the Court should consider the Mattson declaration for their ESA claim, which is also reviewed "under the standards of the APA" and "limited to the administrative record."  *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601–04 (9th Cir. 2014) (cleaned up).

supports the Forest Service's decision, so there is no basis for invoking any exceptions to the record review rule. And third, although the rule generally does not apply to the Court's equitable remedy considerations, the Mattson declaration says nothing about remedy. Even if it did, any consideration of it before a ruling on the merits would be premature. For these reasons, the Court should reject Plaintiffs' attempt to circumvent the record review rule and deny their motion.

## STANDARD OF REVIEW

Judicial review of Plaintiffs' NEPA claims is governed by the APA, which provides that "the court shall review the whole record or those parts of it cited by a party," and makes no provision for extra-record review. 5 U.S.C. § 706; *see also Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) ("review is to be based on the full administrative record" that was before the agency at the time of its decision), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The rule limiting judicial review to the agency's administrative record protects the integrity of the administrative process and precludes a reviewing court from conducting a *de novo* trial and substituting its opinion for that of the agency. *See Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005); *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991) (affirming district court's limitation on the scope of its review to the administrative record and barring discovery); *Friends of the Earth v. Hintz*, 800 F.2d 822, 827-29 (9th Cir. 1986)

(affirming district court's order quashing depositions on ground that review was limited to the administrative record).

The agency determines what constitutes the record, and "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). While Plaintiffs may submit declarations for the purpose of establishing standing, *see Nw. Env't. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527 (9th Cir. 1997), "consideration of extra-record evidence to determine the correctness or wisdom of the agency's decision is not permitted." *Nw. Env't. Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1144 (9th Cir. 2006) (cleaned up); *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980) (same); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450 (post-decisional information may not be advanced to either sustain or attack an agency's decision).

The Ninth Circuit recognizes four narrow circumstances where supplementing an administrative record may be justified: (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied upon documents or materials not included in the record; (3) where necessary to explain or clarify technical matters

involved in the agency action; and (4) where there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decision-makers. *Animal Def. Council v. Hodel*, 840 F.2d 1432,1436-37 (9th Cir. 1988); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). However, the Ninth Circuit has warned that "[t]he scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule." *Lands Council*, 395 F.3d at 1030.

Plaintiffs bear the burden of making a "strong showing" that the extra-record evidence they proffer falls within one of these exceptions. *See Animal Def. Council* at 1438, *opinion amended by* 867 F.2d 1244 (9th Cir. 1989).

And in making that showing, a party must overcome the presumption that an agency properly designated the administrative record by presenting clear evidence that the administrative record is so inadequate that it will frustrate judicial review. *Ctr. for Biological Diversity v. Spellmon*, No. 21-cv-47-BMM, 2022 WL 1734152, at *2 (D. Mont. Feb. 2, 2022) (quoting *Pinnacle Armor v. United States*, 923 F. Supp. 2d 1226, 1245 (E.D. Cal. 2013)); *see also Hunters v. Marten*, 470 F. Supp. 3d 1151, 1166 (D. Mont. 2020) ("Because the agency's designation and certification of an administrative record is entitled to a presumption of regularity, the plaintiff's burden to demonstrate that an exception applies requires clear evidence." (internal quotations and citation omitted)).

## ARGUMENT

The agencies' reasonable decisions are well supported by the Administrative Records they compiled. Therefore, the Court need not look beyond the Forest Service's record to address the merits of Plaintiffs' claims under the APA. Nonetheless, Plaintiffs urge the Court to consider the Mattson declaration to challenge the Forest Service's AMP decision. Not only is this request untimely, but the two exceptions to the record review rule invoked by Plaintiffs— the "relevant factors" and "technical terms" exceptions—clearly do not apply. *See* Pls.' Mot. to Admit Extra-Rec. Evidence ("Pls. Mot.") 11, 30. Instead, it is clear that Plaintiffs want the Court to ignore the Forest Service's reasoned decision-making in favor of their declarant's opinions. Such a request is at odds with the well-settled requirements of the record review rule.

Plaintiffs also argue that the Mattson declaration should be considered by the Court to determine the appropriate remedy if they prevail on the merits. *See id.* at 31. But the Mattson declaration does not address Plaintiffs' requested relief. Even if it did, the more efficient use of judicial resources is to allow the parties to brief remedy separately from the merits *if* the Court rules in Plaintiffs' favor. The Court should decline Plaintiffs' invitation to break from the record review rule and instead deny their Motion.

## I.   Plaintiffs did not comply with the Court's Case Management Order.

As an initial matter, Plaintiffs' Motion violates the Court's Case Management Order entered April 11, 2023, ECF 18, and should be denied on this basis alone.  The Order required Defendants to lodge the Administrative Record by August and then provided a period by which the parties would attempt to informally resolve any disputes concerning the scope of the record.  To do this, Plaintiffs were required to "raise with Federal Defendants informally and in writing, *any and all issues* related to the sufficiency of the agencies' administrative records" by October 6, 2023.  *Id.* at 2 (emphasis added). Plaintiffs did this in a letter asking that the agencies add several studies to the administrative records as well as Mr. Mattson's comment to the Final EA.  Plaintiffs never claimed that the records with these additional documents failed to address the issues contained in the Mattson declaration.

Indeed, it was not until November 6 that Plaintiffs raised the prospect of supplementing the administrative records to include a completely new declaration. But even that untimely request did not attempt to explain any perceived inadequacies in the administrative records that would support their supplementation.  Accordingly, because Plaintiffs did not comply with the Court's Order requiring them to raise any and all issues about the sufficiency of the administrative records by October 6, they have waived the right to seek their

supplementation with the Mattson declaration, and the Court should deny their

Motion.   *Cf.* S*peaks v. Mazda Motor Corp.*, No. CV 14-25-M-DLC, 2015 WL

1189520, at *3 (D. Mont. Mar. 16, 2015) (Christensen, J.) (excluding expert

materials for "[f]ailure to comply with the expert disclosure deadline" set out in the

scheduling order).

## II.   Plaintiffs fail to show that the Administrative Record will frustrate judicial review.

The Forest Service carefully analyzed and documented its analysis of the

proposed action and alternatives for the grazing allotments before issuing its final

AMP decision.  Despite the voluminous record in this case, Plaintiffs assert that the

Mattson declaration is necessary to explain the significance of supposedly

"missing" and "misleading" information. *See generally* Pls. Mot. 14-29 (claiming

that the Final EA lacks four categories of analyses).  Plaintiffs, however, are

mistaken because the Forest Service's Administrative Record includes extensive

analyses of the agency's decision that in no way frustrate judicial review.

First, the Forest Service thoughtfully considered the use of the project area

by grizzly bears and factored it into the baseline existing condition.  AR_2355.[2]

The grizzly bear population has increased and has become more widely distributed

throughout the Greater Yellowstone Area (GYA) over the past 20 years.  *See*

---

[2] "AR_" citations refer to the Forest Service's Supplemented Administrative Record lodged with the Court November 2, 2023, ECF No. 23.

AR_2251.  As a result, there are increased human-bear interactions.  *Id.*  The

Forest Service acknowledged the "increased risk" of conflicts, including those

related to grazing management activities.  AR_2246.  In fact, the Forest Service

considered Mattson's very own irrelevant, erroneous claims that the grizzly bears'

purported "increased reliance on meat" will result in an "exponential" rise in bear-

livestock conflicts on the AMP decision's allotments.  AR_24689; AR_20778; *cf.*

Mattson Decl. ¶¶ 33-39 (arguing that grizzly bears in the AMP decision area will

become more meat dependent, which will cause more conflicts).

The Forest Service explained, however, that cattle are not expected to serve

as a "concentrated food source" for grizzly bears because of the relatively low

livestock numbers and spatial separation of the collective allotments.  AR_2323

(Final Environmental Assessment).  In addition, grizzly bears consume over 266

animal and plant species in the Greater Yellowstone Ecosystem (GYE).  AR_2320

(citing recent scientific literature).  Notably, there have been no grizzly bear

depredations on cattle on the six allotments considered in the EA or on the entire

Forest.  AR_2323.  The Forest Service concluded that the AMP decision would

have only "minor" effects because the grizzly bears' "dietary flexibility" will allow

them to maintain their food sources outside of the cattle grazing on the allotments.

AR_2251; AR_7846.  The Administrative Record's consideration of human-bear

interactions—including female grizzly bears and issues raised in the Mattson

declaration—related to grazing fully enables judicial review.

Second, the Forest Service explained its reasons for moving the grazing

season to June 1.  *See* AR_2296.[3]  Generally, the Forest Service aims to "move

upland vegetation toward desired conditions" by starting the grazing on the

allotments earlier in the year.  *Id.*  In response to comments (including Mr.

Mattson's comments, AR_24683) about the effects of the early stocking date on

grizzly bears, the Forest Service explained that early stocking was not expected to

cause calf depredation because most depredations occur within the hyperphagia

period—July 16 through den entrance in the winter.  *See* AR_2251 (citing Gunther

et al. 2004 and Wells et al. 2019); AR_14886 (Gunther et al. 2004, defining the

grizzly bear seasons); *see also* AR_17710 (Wells et al. 2019, "depredations occur

primarily in July and August when grizzly bears in early hyperphagia increase food

---

[3] Plaintiffs suggest that the Forest Service ought to have reproduced every
specialist report into the Environmental Assessment.  *See* Pls. Mot. 20, 22.  But
"[i]n ensuring an agency's compliance with NEPA, the Court is not strictly
confined to the . . . four corners of the EA . . . ."  *Ctr. for Biological Diversity v.
Blank*, 933 F. Supp. 2d 125, 151-52 (D.D.C. 2013); *accord Ctr. for Env't. Law &
Pol'y v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1009 (9th Cir. 2011)
("Although this evidence is not presented in the cumulative effects section of the
EA, it would impermissibly elevate form over substance to hold [the agency] must
replicate its entire analysis under the heading of cumulative effects."); *see also* 36
C.F.R. § 220.7(a) ("The EA may incorporate by reference information that is
reasonably available to the public.").

consumption to prepare for hibernation").  Again, the information in the

Administrative Record fully enables judicial review.

Third, the Forest Service sufficiently addressed connectivity of grizzly bear

habitat.  The AMP decision area is located entirely within the GYE.  *See*

AR_17778; AR_20900; AR_20988.  "The highest probability of connectivity

between the GYE and Northern Continental Divide ecosystems (NCDE) occurs

further north and west of the East Paradise allotments through the Bridger and

Bangtail mountains (Peck et.al. 2017)."  AR_20907 (Biological Assessment).

Moreover, the Forest Service considered Mr. Mattson's opinion about

connectivity, AR_20742, and ultimately determined that the allotments would not

create a "barrier" to grizzly bear dispersal because of the expanding populations

and extent of grizzly bear distribution.  AR_20907.

Fourth and finally, documents in the Administrative Record address

potential cumulative effects by discussing the potential for grazing activities to

aggregate with residential and recreational developments, mining activities,

motorized vehicle use, and past actions to affect grizzly bears.  AR_20909

(Biological Assessment).  Specifically, the Forest Service analyzed private land

grazing, AR_20909 ("Bears associated with private land conflicts may disperse

onto federal lands potentially increasing the opportunities for conflict with both

livestock and humans."), timber sales, AR_2326 (factoring in "timber harvests in

the past decades, which have contributed to soil disturbance, noxious weed

infestations, and changes in rangeland vegetation"), and other nearby projects,

AR_2327 ("Two potential Forest Service projects include reconstruction of the

Sixmile Trailhead . . . ."). In addition, documents in the Administrative Record

discuss at length the potential conflict for grizzly bear forage and food sources.

AR_2320; AR_2323-24; AR_20901; AR_20906-08; AR_20910. Far from missing

analyses, the Administrative Record provides the Court with all the information

needed to review the AMP decision.

Even if the Administrative Record lacked all this analyses, "the preferred

procedure is to remand to the agency for its amplification." *Parravano v. Babbitt*,

837 F. Supp. 1034, 1039 (N.D. Cal. 1993). Indeed, the Supreme Court has held

that if there were such a failure as Plaintiffs purport there is, the remedy is not to

hold a de novo hearing but to obtain *from the agency* the additional explanation for

the agency decision as may prove necessary. *Camp*, 411 U.S. at 142-43.

In short, Plaintiffs cannot overcome the presumption of regularity that is

owed to the Administrative Record. Without clearing this threshold hurdle,

Plaintiffs do not have a basis for relying on any of the narrow exceptions to the

record review rule. *See Animal Def. Council*, 840 F.2d at 1437, *amended*, 867 F.2d

1244 (9th Cir. 1989) (rejecting request for extra-record review under NEPA

exception because administrative record contained the information that plaintiff

contended was ignored or inadequately explored).  The Court should therefore

deny Plaintiffs' Motion.

### III.    Plaintiffs seek to offer inadmissible expert opinion through the Mattson declaration.

In record review cases, it is inappropriate for a party to submit extra-record

materials in an effort to attack the substantive basis of an agency's decision.  *See*

*Ctr. for Biological Diversity*, 450 F.3d at 943-44; *Sw. Ctr. for Biological Diversity*,

100 F.3d at 1450.  Courts may not consider technical testimony submitted for the

purposes of challenging the "scientific merit" of the agency's decision.  *Asarco*,

616 F.2d at 1161.  Such information is the paradigm of the impermissible "battle of

the experts" and should be excluded from judicial review.  *See e.g., Laguna*

*Greenbelt v. U.S. Dep't of Transp.*, 42 F.3d 517, 526 (9th Cir. 1994) (per curiam);

*Alsea Valley All. v. Evans*, 143 F. Supp. 2d. 1214, 1216-17 (D. Or. 2001) (expert

opinion regarding the sufficiency of the agency decision falls outside the record

and is thus properly stricken); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377

(1989) ("Because analysis of the relevant documents requires a high level of

technical expertise, we must defer to the informed discretion of the responsible

federal agencies.") (internal quotation marks and citation omitted).

Even a cursory review of the Mattson declaration makes clear that he offers

his own interpretations, opinions, and arguments to attack the substantive basis of

the Forest Service's decision.  *See e.g.*, Mattson Decl. ¶¶ 22, 38, 40, 44, 50, 60, 65,

77.  Indeed, Mr. Mattson advances opinions throughout his declaration that claim to challenge the "correctness or wisdom" of the agencies' decisions.  *See Asarco, Inc.* at 1160.  For example, Mr. Mattson takes issue with the Forest Service's connectivity conclusion and creates his own explanation for why he thinks the Forest Service's analysis is incorrect.  *See* Mattson Decl. ¶¶ 71-81.  Tellingly, Plaintiffs cite to the Mattson declaration in support of their arguments on the merits, showing that they are attempting to engage in an improper post hoc battle of the experts.  *See e.g.,* Pls.' Mot. for Summary J., ECF No. 30 at 16-17.

Plaintiffs and their expert may disagree with how the Forest Service applied its extensive scientific expertise in making the challenged decision, but that does not provide a valid legal basis for supplementing the administrative record with the Mattson declaration.  *See, e.g., Greenpeace Action v. Franklin*, 14 F.3d 1324, 1336 (9th Cir. 1992) ("Although Greenpeace has demonstrated that some scientists dispute the [agency's] analyses and conclusions, such a showing is not a sufficient basis for us to conclude that the [agency's] action was arbitrary or capricious."); *Earth Island Inst. v. Carlton*, 626 F.3d 462, 473 (9th Cir. 2010) (declining to engage in a "battle of the experts"); *Marsh*, 490 U.S. at 378 ("when specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive"); *Price Rd. Neighborhood*

*Ass'n Inc. v. U.S. Dep't of Transp.*, 113 F.3d 1505, 1505 (9th Cir. 1997) (same). The Mattson declaration is nothing more than an extensive argument challenging the merits of the Forest Service's analyses.

Notably, another court in this District granted the government's motion to strike a very similar declaration from Mattson just last month in *Helena Hunters & Anglers Ass'n v. Moore*, No. 22-cv-126-DWM, 2023 WL 6626158 (D. Mont. Oct. 11, 2023). In that case, the plaintiffs purported to offer Mr. Mattson's expert opinion declaration to "support their standing claims and their requested relief." *Id.* at *10. But the court correctly found that the declaration was nothing more than a misleading attempt to get expert opinions that "discuss and implicate the merits of the matter" before the court. *See id.* This Court should do the same and deny Plaintiffs' Motion.

### IV.   Plaintiffs fail to show that the "relevant factors" and "technical terms" exceptions apply to the Mattson declaration.

In addition to the Administrative Record being adequate and Plaintiffs' improper use of the Mattson declaration, the Court should deny Plaintiffs' Motion because the Mattson declaration falls under neither the "relevant factors" exception nor the "technical terms" exception to the record review rule.

A court can consider extra-record materials "necessary to determine whether the agency has considered all relevant factors and has explained its decision[.]" *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450 (internal quotation marks and

citation omitted); Pls. Mot. 30-31.  But to invoke this "relevant factors" exception, a party must establish that the extra-record document raises an "entirely new general subject matter that the defendant agency failed to consider," as opposed to merely raising "nuanced points about a particular issue."  *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1234 (E.D. Cal. 2013).  Where the record contains sufficient information to explain how the agency used the information before it and why it reached its decision, the exception does not apply.  *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240-41 (9th Cir. 2010); *Pinnacle Armor*, 923 F. Supp. 2d at 1235 (The relevant factors exception does not apply "when specific hypotheses and/or conclusions are omitted from consideration.  To hold otherwise would allow Plaintiffs to drive a truck through what is supposed to be a narrow exception to the record review rule.").

Courts may admit evidence under this exception "only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious.  But reviewing courts may not look to this evidence as a basis for questioning the agency's scientific analyses or conclusions."  *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014); *Native Ecosystems Council v. Weldon*, 232 F. Supp. 3d 1142, 1149 (D. Mont. 2017) (denying extra-record declarations because "[t]hey do not

support the proposition that the agency failed to consider relevant factors, but rather that its consideration of those factors was scientifically unsound.").

In this case, Plaintiffs have objected to the quality of the Forest Service's NEPA analysis, but there is no indication that judicial review will be frustrated in the absence of Plaintiffs' extra-record declaration.  Indeed, as discussed in section II above, the Administrative Record clearly enables judicial review.

Additionally, the Mattson declaration does not raise any new "general subject matter" relevant to the Forest Service's decision that it failed to consider. *Gallatin Wildlife Ass'n v. United States Forest Serv.*, No. 15-cv-27-BU-BMM, 2016 WL 6684195, at *2 (D. Mont. Mar. 9, 2016) (citation omitted).  Instead, Mr. Mattson merely advances his own "hypotheses" he believes the Forest Service should have considered and the "conclusions" he would have liked the Forest Service to reach.  *See id.*  For example, as discussed above, the Forest Service considered that the grizzly bear population has increased and has become more widely distributed throughout the GYA over the past 20 years, and as a result there is "increased risk" of conflicts, including those related to grazing management activities.  AR_2251; AR_2246.  This example clearly distinguishes the present circumstances from the cases relied on by Plaintiffs in which courts considered extra-record declarations.  *See* Pls. Mot. 29 (citing *Inland Empire Pub. Lands Council v. U.S. Forest Serv.*, 88 F.3d 754 (9th Cir. 1996); *Nat'l Audubon Soc. v.*

*U.S. Forest Serv.*, 46 F.3d 1437, 1448 (9th Cir. 1993); *Washington v. U.S. Dep't of the Navy*, No. 2:19-cv-01059-RAJ-JRC, 2021 WL 8445582 (W.D. Wash. Dec. 10, 2021); *Hunters v. Marten*, 470 F. Supp. 3d 1151 (D. Mont. 2020); *Hausrath v. United States Dep't of the Air Force*, 491 F. Supp. 3d 770, 787 (D. Idaho 2020)).[4]

While Mr. Mattson may disagree with the Forest Service's analysis and conclusions and suggest additional information should have been considered regarding the risk of conflicts, any such disagreement is insufficient to supplement the Administrative Record under the "relevant factors" exception . *See Gallatin Wildlife Ass'n*, 2016 WL 6684195, at *2 (denying motion to supplement on this exception where "[t]he administrative record show[ed] that [the Forest Service] ha[d] at least considered generally the risk to the bighorn sheep posed by contact with domestic sheep in the Revised Forest Plan" and proposed supplement would

---

[4] The administrative records in *National Audubon*, *Hunters*, and *Washington* wholly lacked consideration of "serious environmental consequences" due to "an irreversible and irretrievable decision." *Nat'l Audubon*, 46 F.3d at 1448 (decision to harvest timber on a previously undeveloped tract of land "completely ignored the roadless nature of the timber sales"); *see also Washington*, 2021 WL 8445582, at *6 ("[N]owhere in the FEIS does the Navy disclose that these emission calculations eliminate from the analysis all emissions above 3,000 feet."); *Hunters*, 470 F. Supp. 3d at 1167 (decision to use "existing routes in the roadless area" contained no information about those routes). The extra-record declaration admitted in *Hausrath* did "not offer alternative opinions directly commenting upon the wisdom of the [agency's] ultimate decision." 491 F. Supp. 3d at 787. Finally, it is questionable whether the *Inland Empire* court actually considered the Mills declaration in upholding the Forest Service's decision. *Inland Empire*, 88 F.3d 754 at 760-63 (citing only to the Forest Service's analyses).

merely "provide additional evidence" of the risk).  Plainly, the Mattson declaration is not being advanced by Plaintiffs for the purpose of showing that the Forest Service failed to consider any general subject matter but rather to get before the Court their expert's opinion on his perceived "shortcomings" in the "government analyses." *See* Mattson Decl. ¶ 4.

Likewise, the Mattson declaration is unnecessary for the Court to understand the Forest Service's decision, which simply authorizes cattle grazing.  Courts are "reluctant to invoke" the "technical terms" exception. *Parravano*, 837 F. Supp. at 1039 (citing *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982)). It is "limited to cases where the agency action is so poorly explained that effective judicial review is precluded." *Id.*  When a key fact that the proffered extra-record evidence seeks to explain can be ascertained through other, more straightforward means, judicial review will not be frustrated. *See Sw. Ctr. for Biological Diversity*, 100 F.3d at 1451 (upholding motion to strike the extra-record evidence because the information could be extracted from the record).

Plaintiffs assert that the Mattson declaration explains "the cause of escalating conflicts, the additional risks associated with earlier stocking dates, and the importance of connectivity," which according to Plaintiffs are issues that are "complex and technical in nature."  But Plaintiffs appear to simply put forth their own perspective of the issues to challenge the Forest Service's expertise as

discussed in Section II above.  Plaintiffs' use of the Mattson declaration to attack the Forest Service's methodology for estimating grizzly bear population and trends is exactly the type of use that is prohibited.  *See Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 986 (9th Cir. 1985) ("NEPA does not require that we decide whether an [EA] is based on the best scientific methodology available, nor does NEPA require us to resolve disagreements among various scientists as to methodology.").  Plaintiffs' proffered declaration also contains irrelevant information that would only confuse the issues.  For example, the Mattson declaration's Figure 3 depicts depredations outside of the AMP decision area and are therefore irrelevant.  *See* Pls. Mot. 14-15.  The Court should reject the Mattson declaration because it does not assist with "technical terms."

In short, Mr. Mattson's opinions challenging the Forest Service's scientific wisdom are neither necessary because the Administrative Record contains analyses of the "relevant factors" that the Mattson declaration addresses nor allowed under the record review rule.  The Mattson declaration does not explain "technical terms" but instead confuses the issues by supplying irrelevant information.

## V.   The Mattson declaration does not support Plaintiffs' request for relief.

Finally, Plaintiffs claim that the Mattson declaration should be considered as to remedy, but the information in the declaration is irrelevant to remedy.  If Plaintiffs were to prevail, they presumably would ask the Court to vacate the

Forest Service's decision, and Defendants would oppose Plaintiffs' request. The

Court would then consider the seriousness of any errors and the disruptive

consequences that would ensue if vacatur were ordered. *See Cal. Cmties. Against*

*Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012). But the seriousness of an

agency's errors is a legal issue that would depend on the Court's analysis of the

merits. That inquiry could not be informed by the consideration of extra-record

evidence that is prohibited on the merits. And the Mattson declaration says

nothing about disruptive consequences that would or would not occur if the AMP

decision were vacated, and it says nothing about the potential of irreparable harm

to Plaintiffs but rather simply disagrees with the Forest Service's decision. *See*

*Helena Hunters*, 2023 WL 6626158, at *10 (citing *Nat'l Wildlife Fed'n v. Nat'l*

*Marine Fisheries Serv.*, 422 F.3d 782, 797 (9th Cir. 2005)). Thus, the Court

should not admit the Mattson declaration for the purposes of remedy.

## CONCLUSION

By reserving the Mattson declaration for litigation, Plaintiffs attempt to

frustrate the very purpose of record review under the APA. The Forest Service

compiled and lodged an extensive and thorough Administrative Record that fully

explains the basis for its AMP decision. Plaintiffs' attempt to second-guess the

Forest Service's fully supported decision based on a declaration setting forth

analysis and evidence that Plaintiffs compiled *after* the conclusion of the

administrative process is improper and should fail. The Court should deny

Plaintiffs' Motion and review the challenged decision on the Administrative

Record lodged with this Court pursuant to the record review rule of the APA.

Dated: December 8, 2023          Respectfully submitted,

                                 TODD KIM
                                 Assistant Attorney General

                                  */s/ Krystal-Rose Perez*
                                 JOSEPH W. CRUSHAM
                                 Trial Attorney, CA Bar No. 324764
                                 Wildlife & Marine Resources Section
                                 KRYSTAL-ROSE PEREZ
                                 Trial Attorney, TX Bar No. 24105931
                                 Natural Resources Section
                                 Environment & Natural Resources Division
                                 U.S. Department of Justice
                                 150 M Street, N.E.
                                 Washington, D.C. 20002
                                 (202) 307-1145 (Crusham)
                                 (202) 305-0486 (Perez)
                                 (202) 305-0275 (fax)
                                 joseph.crusham@usdoj.gov
                                 krystal-rose.perez@usdoj.gov

                                 *Counsel for Federal Defendants*

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

In accordance with Local Rule 7.1(d)(2)(E), I hereby certify that this brief

complies with Local Rule 7.1(d)(2)(A) and contains 5,803 words.

                                 */s/ Krystal-Rose Perez*
                                 KRYSTAL-ROSE PEREZ
                                 *Attorney for Defendants*